UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FRANK VAN WULFEN,

        Plaintiff,

                                            Case Number 08-10106-BC
v.                                        Honorable Thomas L. Ludington

COUNTY OF MONTMORENCY,

        Defendant.
_____/

**<u>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S REQUEST TO DISMISS COMPLAINT, STAYING THE CASE PURSUANT TO THE YOUNGER ABSTENTION DOCTRINE, AND SETTING TELEPHONIC STATUS CONFERENCE</u>**

On January 7, 2008, Plaintiff Frank Van Wulfen ("Plaintiff") filed a complaint before this Court, alleging Defendant County of Montmorency ("Defendant") violated Plaintiff's rights guaranteed by the constitutions of the State of Michigan and the United States. Plaintiff owns a home on Avery Lake in Atlanta, Michigan. The water level of Avery Lake is regulated by a dam under the control of Defendant. Plaintiff alleges that the water levels established by Defendant from 1996 to 1999 damaged the foundation of the home and an external sea wall surrounding the property. The complaint maintains that Defendant's conduct is compensable under the Takings Clause of the Fifth Amendment.

On September 26, 2008, Plaintiff requested the Court to declare his cause of action ripe for adjudication in federal court by motion for summary judgment pursuant to Fed. R. Civ. P. 56. Dkt. # 8 (citing 28 U.S.C. § 2201). Defendant's response requested that the Court dismiss Plaintiff's complaint or stay this action pending the conclusion of proceedings in the Michigan Court of Appeals. Dkt. # 10. For the reasons expressed hereafter, the Court will deny Plaintiff's motion for

summary judgment and Defendant's request to dismiss, and abstain from the case pending the resolution of the state court appellate process.

I

In September of 1996, the Montmorency County prosecutor filed a petition on behalf of Defendant to alter the level of Avery Lake. Pursuant to the Inland Lakes Act, Mich. Comp. Laws §324.30701 *et seq.*, interested parties were notified of proceedings and permitted an opportunity to provide testimony for the circuit court's consideration when determining the appropriate level of the lake. In 1997, Plaintiff and his mother objected to the recommended lake level, contending that it would damage their residence. The court granted the petition in part and established a new lake level.

In 2001, Plaintiff's mother petitioned the Montmorency County Circuit Court to redetermine the level of the lake. In response, the court conducted an evidentiary hearing. The petitioner's expert witness opined that the new lake level increased the level of the ground water under the property and caused damage to the home's foundation and sea wall. While returning the level of the lake to pre-1996 levels, the court rejected the findings of the expert and concluded that the petitioner had not demonstrated that the lake level between 1996 and 2001 caused damage to Plaintiff's property.

Plaintiff's instant complaint represents his fourth later filed complaint in the Montmorency County Circuit Court or the United States District Court for the Eastern District of Michigan, that has generally advanced claims for damage caused by the lake level. Plaintiff's first complaint was filed on April 12, 2002 in Montmorency Circuit Court, but that court dismissed Plaintiff's complaint under the doctrine of collateral estoppel. The court reasoned that the previous hearing pursuant to

the Inland Lakes Act, addressing the petition challenging the level of the lake, found that the lake level did not cause damage to the residence and, consequently, the issue of causation had been decided.

Next, Plaintiff filed a complaint in United States District Court, which was assigned to this Court's predecessor, the Honorable David M. Lawson. On November 10, 2004, Judge Lawson dismissed that complaint without prejudice, concluding, inter alia, that Plaintiff's inverse condemnation claim was not ripe for adjudication because he had not received a final decision from the state court with respect to damage to the sea wall. *Van Wulfen v. Montmorency County,* 345 F. Supp. 2d 730, 742 (E.D. Mich. 2004); *see Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson*, 473 U.S. 172, 186 (1985). Judge Lawson also concluded that the state court had erred in concluding that the doctrine of collateral estoppel barred Plaintiff's claim, because the circuit court hearing that addressed Plaintiff's 2001 petition was acting in an administrative role under the Inland Lakes Act and not in an adjudicatory capacity. *Van Wulfen,* 345 F. Supp. 2d at 741. Likewise, Judge Lawson also reasoned that the *Rooker-Feldman* doctrine did not apply to the circuit court proceeding because *Williamson* requires a plaintiff to secure a final determination before a federal Fifth Amendment claim is ripe. *Id.* (citing *DTX, Inc. v. Kentucky*, 381 F.3d 511, 518-19 (6th Cir. 2004)).

Consequently, Plaintiff filed a second complaint before the Montmorency County Circuit Court alleging a cause of action for inverse condemnation seeking compensation for the damage to the foundation and the sea wall. The state court concluded that Plaintiff's claim for damages to the foundation of his home was precluded by its prior decision. *See Zerfas v. Bills*, 40 N.W.2d 763, 766 (Mich. 1950)(res judicata precluded the re-litigation of issues decided at hearing pursuant to Inland

Lakes Act). At Plaintiff's request, the court did not resolve Plaintiff's Fifth Amendment takings claim in the bench trial. Rather, Plaintiff's trial brief sought to "reserve" that claim under the United States Constitution for this Court. *See England v. La. State Bd. of Med. Exam'rs*, 375 U.S. 411 (1964). *England* permits a state-court litigant to reserve a federal constitutional challenge to state action for adjudication in federal court in certain circumstances. *Id.* at 420-22. In any event, Defendant argued that Plaintiff's *England* reservation was not timely raised and, thus, Plaintiff had waived his entitlement to litigate his federal constitutional claims in federal court. The state court disagreed with Defendant and respected Plaintiff's reservation.

After conducting the bench trial, Circuit Judge Richard M. Pajtas found in favor of Defendant with respect to Plaintiff's inverse condemnation claim for damage to the sea wall. The state court acknowledged that damage to the sea wall occurred during the period of elevated lake levels. However, Judge Pajtas concluded that Plaintiff did not meet his burden of proof of causation; a necessary element for an inverse condemnation cause of action. Dkt. # 10-12 at 8; *see, e.g., Heinrich v. City of Detroit*, 282 N.W.2d 448, 451-52 (Mich. Ct. App. 1979) (burden rests with plaintiff to demonstrate that "government's actions were a [s]ubstantial cause" of damage to property). The state court considered competing expert opinions offered by the parties. *Id.* at 6-8. Plaintiff's expert opined that the elevated level during winter caused the saturation of soil. *Id.* at 6. When temperatures dropped, the soil froze, expanded, and exerted pressure on the sea wall. *Id.*

Defendant's expert rebutted the assertion that the lake level caused the soil expansion, opining that the soil would have contracted during warmer temperatures, but pointing out that the soil remained "mounded." *Id.* at 7. Defendant's expert also noted that the sea wall moved twelve inches towards the house since 2001, the period post-dating the return to pre-1996 levels. *Id.* The

-4-

state court found that fact dispositive, as it demonstrated that pressures on the sea wall existed outside of the 1996 to 2001 lake level. *Id.* at 7-8  Ultimately, the state court concluded that "wind-driven ice floes", not the lake level, caused the damage to the sea wall. *Id.* at 8.

In October of 2007, the parties each appealed decisions of the trial court to the Michigan Court of Appeals. Plaintiff appealed the court's finding of no cause of action for damage to the sea wall and the court's application of claim preclusion for damage to the foundation.  Defendant asserted on appeal that Plaintiff's *England* reservation was waived because it was not timely raised.

On January 7, 2008, Plaintiff filed the complaint that is presently before this Court. Plaintiff's complaint restates his cause of action for inverse condemnation. He presently moves for a declaration that the claim is ripe pursuant to 28 U.S.C. § 2201(a).  Dkt. # 8.

II

A

Plaintiff's contends in his motion that he has ripened his claim for damage to the sea wall by complying with both prongs of the test established in *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985).  Under *Williamson,* a Fifth Amendment takings claim asserted against a local government is not ripe for federal-court adjudication until the party has completed all available state law recourse for compensation. *Id.* at 186-91.

As Judge Lawson previously noted, Plaintiff pursued available administrative remedies through the petition filed pursuant to the Inland Lakes Act before the Montmorency County Circuit Court; thus, "prong-one" ripeness had been met.    *Van Wulfen,* 345 F. Supp. 2d at 742.  Judge Lawson also concluded that Plaintiff had not fully availed himself to the judicial remedy under state law, because he had voluntarily dismissed claims associated with damage to the sea wall. *Id.*  Thus,

the "prong-two" ripeness requirement had not been met.

*Williamson* provides that "the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." 473 U.S. at 195. Plaintiff now asserts that the state court's adverse adjudication of his claim for compensation for the sea wall satisfies the *Williamson* ripeness test, permitting adjudication of his federal constitution takings claim.

While Plaintiff has attained a trial-court decision on the merits concerning causation, it can not be said that he has yet met the "prong-two" ripeness requirement. In light of the trial court's decision, Plaintiff has voluntarily continued to pursue compensation for the condemnation through his appeal to the state appellate court. Causation is a common element to his inverse condemnation claim under the Michigan Constitution and a takings claim under the U.S. Constitution. The state-court proceeding is not yet final.

B

Consequently, the Court agrees with Defendant that the *Younger* abstention doctrine is appropriate here. The *Younger* abstention doctrine restrains a federal court from interfering with state appellate proceedings. *Fieger v. Cox*, 524 F.3d 770, 774-75 (6th Cir. 2008) (citing *Younger v. Harris*, 401 U.S. 37, 43, 45 (1971)). The following factors guide the doctrine's application: "(1) whether the underlying proceedings constitute an ongoing judicial proceeding, (2) whether the proceedings implicate an important state interest, and (3) whether there is an adequate opportunity in the state proceedings to raise a constitutional challenge." *Id.* at 775 (citation omitted).

Each of these factors are met. First, the parties represent that both have appealed decisions of the trial court to the Michigan Court of Appeals, which is still pending. Second, those appeals

directly implicate the interpretation of state law. Third, Plaintiff had the opportunity to raise his constitutional claims in the state proceeding, regardless of whether it is his preferred forum. Thus, it is appropriate to stay these proceedings pending the decision of the state appeals court.

C

Finally, Defendant requests the Court to dismiss the complaint in light of the U.S. Supreme Court's decision in *San Remo Hotel, L.P. v. City and County of San Francisco*, 545 U.S. 323 (2005) – a decision which post-dates Judge Lawson's opinion. *San Remo* addresses whether a state court's conclusions concerning a plaintiff's state claims – advanced by the plaintiff to satisfy *Williamson* ripening requirement – have preclusive effect on a federal court resolving a takings claim with common issues. The Court rejected the notion that "an *England* reservation would fully negate the preclusive effect of the state-court judgment with respect to any and all federal issues that might arise in the future federal litigation." *Id.* at 338. The Court noted that while a plaintiff may prefer to pursue their federal claims in federal court, a plaintiff does not retain a "right" to do so. *Id.* at 342. Congress's codification of full faith and credit between state and federal courts, 28 U.S.C. § 1738, does not express an exemption for state court decisions concerning a federal takings claims. *Id.* at 345. A federal court is bound to respect those decisions. *Id.* While *Williamson* may funnel a begrudging plaintiff to state court, it does not preclude Plaintiff's ability to raise the federal claims in the state forum. *Id.* at 346.

*San Remo* concludes that 28 U.S.C. § 1738 requires this Court to respect state-court conclusions concerning issues common to the state and federal causes of action, e.g., causation. *See, e.g., Kingsport Horizontal Prop. Regime v. United States*, 46 Fed. Cl. 691, 693 (Ct. Cl. 2000)("In order to establish a taking claim under the Fifth Amendment, a plaintiff must first demonstrate by

a preponderance of the evidence that the government's action was the direct and proximate cause of the injury suffered."); *see also Alost v. United States*, 73 Fed. Cl. 480, 505-06 (Ct. Cl. 2006). It is premature to dismiss the complaint because the Michigan Court of Appeals could disagree with the conclusions of the trial court, including causation. Consequently, it is appropriate that this Court refrain from addressing Plaintiff's request for relief until the appellate process is complete.

III

Accordingly, it is **ORDERED** that Plaintiff's motion for summary judgment [Dkt. # 8] and Defendant's request to dismiss [Dkt. # 10] are **DENIED**.

It is further **ORDERED** that this matter is **STAYED** until further order of the Court.

It is further **ORDERED** that counsel for the parties shall appear at a telephonic status conference on **July 10, 2009 at 2:00 p.m.** Counsel for Defendant shall initiate the call and notify the Court and Plaintiff of any necessary arrangements. In the event that the Michigan Court of Appeals issues an opinion addressing the remaining issues before July 10, 2009, the parties shall file a notice and copy of the decision on the Court's electronic docketing system within ten days of the decision.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: February 6, 2009

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 6, 2009.

         s/Tracy A. Jacobs
         TRACY A. JACOBS