UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FRANK VAN WULFEN,

        Plaintiff,

                              Case Number 08-10106-BC
v.                                      Honorable Thomas L. Ludington

COUNTY OF MONTMORENCY,

        Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING PLAINTIFF'S COMPLAINT WITH PREJUDICE

Plaintiff Frank Van Wulfen filed a complaint in this Court on January 7, 2008, alleging that Defendant Montmorency County had violated his constitutional rights by maintaining higher than historic-average water levels on Avery Lake between 1996 and 2001. [Dkt. # 1]. The complaint was the second filed in this Court, in addition to at least two cases filed in Michigan state courts, related to alleged property damage to Plaintiff's home and seawall on the north shore of the lake caused by the higher water levels. *Id.* On February 6, 2009, this Court issued an order staying proceedings pursuant to the *Younger* abstention doctrine, pending resolution of Plaintiff's state court claims. [Dkt. # 12]. The stay was lifted on September 16, 2009, following a decision from the Michigan Court of Appeals affirming the state trial court's conclusion that Plaintiff's property damage was not caused by higher lake levels. *Van Wulfen v. Montmorency County* (*Van Wulfen II*), No. 281930, 2009 WL 723806 (Mar. 19. 2009). The Michigan Supreme Court declined to hear an appeal on August 6, 2009. *Van Wulfen v. Montmorency County*, 769 N.W.2d 719 (2009).

Now before the Court is Defendant's motion for summary judgment [Dkt. # 15]. Fed. R. Civ. P. 56. Defendant contends that Plaintiff did not preserve his Fifth Amendment takings claim

by the purported "*England* reservation" submitted to the state trial court immediately before a bench trial. Def.'s Mot. for Summ. J. at 10; *see also England v. Louisiana State Bd. of Med. Exam'rs*, 375 U.S. 411 (1964). Defendant further contends that Plaintiff's inverse condemnation and takings claims are barred by the doctrine of collateral estoppel or issue preclusion. Def.'s Mot. for Summ. J. at 17. Plaintiff's response contends that his *England* reservation preserved his Fifth Amendment claim for adjudication by a federal court, and that the issue of collateral estoppel has already been decided in his favor by an earlier decision of this Court, *Van Wulfen v. Montmorency County* (*Van Wulfen I*), 345 F. Supp. 2d 730 (E.D. Mich. 2004) (Lawson, J.).

Pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), the Court finds that the issues presented are adequately set forth in the briefs and oral argument is unnecessary. Accordingly, the hearing set for January 13, 2010 will be **CANCELLED**. Because the state courts' conclusion that Plaintiff cannot prove causation forecloses relitigation of that issue in this Court, Defendant's motion for summary judgment will be **GRANTED** and Plaintiff's complaint will be **DISMISSED WITH PREJUDICE**.

**I**

The undisputed facts of this case have been set forth in detail in previous opinions issued by this Court and the Michigan Court of Appeals. *See Van Wulfen I*, 345 F. Supp. 2d 730; *Van Wulfen II*, No. 281930, 2009 WL 723806. This dispute arose in the late 1990s and has focused on whether the fluctuating water level of Avery Lake in Montmorency County, Michigan damaged Plaintiff's home and seawall on the north shore of the lake. The level of the lake is controlled by the Montmorency County Drain Commissioner under the direction of the Inland Lake Level Act, Mich. Comp. Laws §§ 327.30701–.30723.

Pursuant to the Inland Lake Level Act, in 1970 the Montmorency Circuit Court set the lake level at 890.3 feet above sea level in the winter and 891.3 feet above sea level in the summer. In 1982 the winter level was reduced to 888.8 feet above sea level. In 1997, acting on the county prosecutor's request, the normal level was adjusted to 890.3 feet at all times of the year. Thereafter, the level was periodically raised, a few inches at a time, and eventually set at 891.13 feet above sea level, throughout the year, on April 20, 1999.

After Plaintiff's predecessor in interest, Anna Van Wulfen, petitioned the county to redetermine the lake level in October 2000, the lake was restored to its 1970–1982 level by an October 2001 court order. [Dkt. # 15-2]. In a twenty-one-page opinion, Judge John Kowalski questioned the reliability of Anna Van Wulfen's experts and noted he was "unable to find that the problems with the Van Wulfen home, except for the mounding in front of the home, are related to the lake level of Avery Lake." [Dkt. # 15-2 at 18].

In April 2002 Plaintiff filed a complaint in Montmorency Circuit Court, alleging, inter alia, claims for inverse condemnation and gross negligence. The inverse condemnation claim, at least as it related to damage to the home, was dismissed pursuant to the doctrine of issue preclusion based on Judge Kowalski's October 2001 conclusion that the problems were not "related to the lake level." The remainder of the claims were dismissed by stipulation and Plaintiff filed a new complaint in this Court on April 9, 2004. Case No. 04-10098-BC.

On November 10, 2004, the Honorable David M. Lawson dismissed without prejudice Plaintiff's inverse condemnation and takings claims, concluding they were not ripe. *See Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985). Judge Lawson concluded that Plaintiff was required to seek payment for damage to his home and seawall in state

court before pursuing a federal claim. *Van Wulfen I*, 345 F. Supp. 2d at 743. Judge Lawson also commented, in dicta,[1] that the doctrine of issue preclusion did not bar Plaintiff's Fifth Amendment claims because Judge Kowalski's 2001 opinion was "administrative" and not "adjudicatory in nature." *Id.* at 740 (citing *Pennwalt Corp. v. Pub. Serv. Comm'n*, 166 Mich. App. 1 (1988)). The comment contradicted an earlier order issued by the Montmorency County Circuit Court.

Plaintiff returned to state court, filing a complaint in Montmorency County Circuit Court in December 2004. Defendant's motion for summary judgment was initially denied, but its motion for reconsideration was granted as to the inverse condemnation claims relating to damage to the house. The court held that the doctrine of issue preclusion[2] prevented relitigating whether the increased lake level caused the damage to the home, but denied summary judgment as to the other claims. *See Zerfas v. Eaton County Drain Comm'n*, 326 Mich. 657 (1950). In his opposition to the summary judgment motion, Plaintiff relied on both state and federal law. The case proceeded to a bench trial on the question of whether the increased lake level caused the mounding and damage to the seawall.

Plaintiff asserted an *England* reservation immediately before trial for the first time. The state court concluded Plaintiff had abandoned his federal inverse condemnation claim. It further concluded that Plaintiff had not met his burden of proof on causation, finding that Plaintiff could not

---

[1]Judge Lawson's comments on issue preclusion are dicta because they were unnecessary to the resolution of the case. *See United States v. Hardin*, 539 F.3d 404, 415 & n.5 (6th Cir. 2008). As such, the portions of his opinion relating to issue preclusion are less persuasive than they would be if Judge Lawson would have been required to resolve the issue in order to reach a conclusion in the case. *See Asmo v. Keane, Inc.*, 471 F.3d 588, 599–600 (6th Cir. 2006) (citing *Williams v. Anderson*, 460 F.3d 789, 796 (6th Cir. 2006); *ACLU of Ohio v. Taft*, 385 F.3d 641, 649 n.4 (6th Cir. 2004)).

[2]The court apparently referred to issue preclusion as "res judicata," a Latin phrase more commonly associated with claim preclusion.

prove by a preponderance of the evidence that the increased lake level caused the damage to the seawall. Plaintiff filed an appeal with the Michigan Court of Appeals in late 2007, and while it was still pending, he also filed a second complaint in this Court on January 7, 2008.

In a February 6, 2009 order, this Court denied Plaintiff's motion for summary judgment as to his request for a declaration that his Fifth Amendment claims were ripe, and stayed the case pending resolution of Plaintiff's state-court appeal. *Van Wulfen v. County of Montmorency* (*Van Wulfen III*), No. 08-10106-BC, 2009 WL 307504 (E.D. Mich. Feb. 6, 2009). The Court concluded, pursuant to the *Younger* abstention doctrine, that it was appropriate to stay the proceedings until Plaintiff had completed his appeal in the state courts. *Id.* (citing *Fieger v. Cox*, 524 F.3d 770, 774–75 (6th Cir. 2008) (citing *Younger v. Harris*, 401 U.S. 37, 43, 45 (1971))). The Court also addressed Defendant's argument that Plaintiff's complaint should be dismissed pursuant to the doctrine of issue preclusion.

> Defendant requests the Court to dismiss the complaint in light of the U.S. Supreme Court's decision in *San Remo Hotel, L.P. v. City and County of San Francisco*, 545 U.S. 323 (2005)—a decision which post-dates Judge Lawson's opinion. *San Remo* addresses whether a state court's conclusions concerning a plaintiff's state claims—advanced by the plaintiff to satisfy *Williamson*['s] ripening requirement—have preclusive effect on a federal court resolving a takings claim with common issues. The Court rejected the notion that "an *England* reservation would fully negate the preclusive effect of the state-court judgment with respect to any and all federal issues that might arise in the future federal litigation." *Id.* at 338. The Court noted that while a plaintiff may prefer to pursue their federal claims in federal court, a plaintiff does not retain a "right" to do so. *Id.* at 342. Congress's codification of full faith and credit between state and federal courts, 28 U.S.C. § 1738, does not express an exemption for state court decisions concerning a federal takings claims. *Id.* at 345. A federal court is bound to respect those decisions. *Id.* While Williamson may funnel a begrudging plaintiff to state court, it does not preclude Plaintiff's ability to raise the federal claims in the state forum. *Id.* at 346.
>
> *San Remo* concludes that 28 U.S.C. § 1738 requires this Court to respect state-court conclusions concerning issues common to the state and federal causes of action, e.g.,

> causation. *See, e.g.*, *Kingsport Horizontal Prop. Regime v. United States*, 46 Fed. Cl. 691, 693 (Ct. Cl. 2000) ("In order to establish a taking claim under the Fifth Amendment, a plaintiff must first demonstrate by a preponderance of the evidence that the government's action was the direct and proximate cause of the injury suffered."); *see also Alost v. United States*, 73 Fed. Cl. 480, 505–06 (Ct. Cl. 2006). It is premature to dismiss the complaint because the Michigan Court of Appeals could disagree with the conclusions of the trial court, including causation. Consequently, it is appropriate that this Court refrain from addressing Plaintiff's request for relief until the appellate process is complete.

*Van Wulfen III*, No. 08-10106-BC, 2009 WL 307504 at *4.

On March 19, 2009 the Michigan Court of Appeals issued its opinion in *Van Wulfen II*, affirming the Montmorency County Court's decision. The Michigan Supreme Court declined to hear an appeal on August 6, 2009. *Van Wulfen v. Montmorency County*, 769 N.W.2d 719 (2009). The stay was lifted on September 16, 2009 [Dkt. # 14], and the case is now ripe for federal court review. *See Williamson County*, 473 U.S. 172.

**II**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial responsibility of identifying the specific portions of the record which "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Entry of judgment in favor of the moving party is merited if the nonmoving party does not present sufficient evidence of an essential element of that party's case, and on which it will bear the burden of proof at trial, for a reasonable jury to find for the nonmoving party. *Id.*; *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990).

The Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. "[A] landowner is entitled to bring an action in inverse condemnation" pursuant to the Fifth Amendment and 42 U.S.C. § 1983, in the absence of a formal eminent domain proceeding, if a state or local regulation "goes too far" and causes permanent damage to the property. *First English Evangelical Lutheran Church v. Los Angeles County*, 482 U.S. 304, 316 (1987) (citing *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)); *see also Anderson v. Charter Twp. of Ypsilanti*, 266 F.3d 487, 493–94 (6th Cir. 2001) (noting that a landowners may pursue a regulatory taking claim pursuant to the Fifth Amendment when "land is deprived of some but not all of its economic value as a result of government regulation") (citation omitted). However, as Judge Lawson concluded in *Van Wulfen I*, a "Fifth Amendment takings claim against a local government is not ripe until the claimant has availed himself of all the administrative remedies through which the [state] government might reach a final decision regarding the regulations that effect the taking, and the State's judicial remedies for determining or awarding just compensation." 345 F. Supp. 2d at 742 (citing *Williamson*, 473 U.S. at 186). That is, a prospective plaintiff cannot pursue an inverse condemnation claim in federal court until all of the plaintiff's state-level remedies have been exhausted.

Moreover, the Constitution provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." Const. Art. IV, § 1. Pursuant to the constitutional mandate, Congress enacted 28 U.S.C. § 1738, which provides "judicial proceedings . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have

by law or usage in the courts of such State, Territory or Possession from which they are taken." Accordingly, the judicial proceedings of a Michigan state court must be given the same effect in this Court that they would in any other Michigan court.

In *San Remo Hotel*, which was decided after *Van Wulfen I*, the Supreme Court interpreted the Full Faith and Credit Clause and § 1738 in a similar factual context. 545 U.S. 323. The plaintiff hotelier in *San Remo* instituted an action in state court challenging the constitutionality on state law grounds of an ordinance that required payment of a fee by the hotelier when it converted residential rooms to tourist rooms. *Id.* at 326–27. After the state court rejected the plaintiff's claims, it initiated a second action in federal court, challenging the ordinance on federal grounds that were factually identical to the claims previously rejected by the state court. *Id.* Plaintiff contended, based on *Williamson*, that "[u]nless courts disregard § 1738 in takings cases . . . plaintiffs will be forced to litigate their claims in state court without any realistic possibility of ever obtaining review in a federal forum." *Id.* at 327. The Supreme Court rejected the plaintiff's contention and held that all claims fully and fairly litigated in state court are barred from relitigation in federal court.

Then-Chief Justice Rehnquist summarized the unusual situation created by the combination of the *Williamson* exhaustion requirement and § 1738 in an opinion, joined by three other justices, concurring in the judgment. The Chief Justice suggested that it might be appropriate for the Court to revisit *Williamson*'s state-court exhaustion requirement.

> [O]ur holding today ensures that litigants who go to state court to seek compensation will likely be unable later to assert their federal takings claims in federal court. [Citation omitted]. And, even if preclusion law would not block a litigant's claim, the *Rooker- Feldman* doctrine might, insofar as *Williamson County* can be read to characterize the state courts' denial of compensation as a required element of the Fifth Amendment takings claim. *See Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). As the Court recognizes, [citation omitted], *Williamson County* all but guarantees that claimants

-8-

> will be unable to utilize the federal courts to enforce the Fifth Amendment's just compensation guarantee. The basic principle that state courts are competent to enforce federal rights and to adjudicate federal takings claims is sound . . . . But that principle does not explain why federal takings claims in particular should be singled out to be confined to state court, in the absence of any asserted justification or congressional directive.

*Id.* at 351.

### III

Despite the fact that Plaintiff's claims are now ripe for consideration, Defendant's motion for summary judgment must be granted because it has demonstrated that Plaintiff cannot prevail on a required element of his claim. Causation is a required element of a takings claim pursuant to the Fifth Amendment. *See, e.g.*, *Kingsport Horizontal Prop. Regime v. United States*, 46 Fed. Cl. 691, 693 (2000). Michigan state courts have previously concluded that Plaintiff cannot prove by a preponderance of the evidence that raising the water level of Avery Lake caused the damage to his home and seawall. That issue cannot be revisited here.

Judge John Kowalski of the Montmorency Circuit Court concluded in 2001, after a hearing conducted pursuant to Mich. Comp. Laws 324.30707–.30708, that "the lake level, which existed between 1970–1982, caused no structural damage, earth mound or any other problems . . . ." He further concluded that "except for the mounding in front of the home," he was "unable to find" that the problems with the Van Wulfen residence "are related to the lake level of Avery Lake." Judge Kowalski's opinion on causation was held to be preclusive in an opinion issued shortly thereafter by Judge Joseph P. Swallow, also of the Montmorency Circuit Court. Moreover, Judge Swallow's conclusion was endorsed by the Michigan Court of Appeals in *Van Wulfen II*.

> In the instant matter, plaintiff petitioned the circuit court to readjust the lake levels [in 2001]. During those proceedings, Anna VanWulfen asserted that the higher lake levels were damaging the property, including the house. The court determined that

it was "not able to find that the problems with the VanWuflen home, except for the mounding in front of the home, are related to the lake level of Avery Lake." As a result of the petition the court lowered the lake level to its previous level. Plaintiff then filed a separate lawsuit alleging claims of inverse condemnation, trespass and nuisance, and gross negligence, based on his contention that the lake levels between 1997 and 2001 had damaged the home. The court concluded that collateral estoppel barred the portion of plaintiff's claim relating to damage caused to the home. That case was dismissed by stipulation and plaintiff filed a new lawsuit in federal district court. The federal court dismissed that action on ripeness grounds. Plaintiff then filed another complaint in state court, alleging a federal takings claim and an inverse condemnation claim under the U.S. and Michigan Constitutions. The court found that plaintiff's takings claims were barred with respect to damage caused to the home, but not with respect to the mounding.

This was the correct result. The 2000–2001 lake level determination was a final adjudication from which no appeal was taken. *Zerfas*, *supra* at 664, 40 N.W.2d 763. Although the circuit court did not actually adjudicate plaintiff's individual rights, as the [Inland Lake Level Act] does not provide such protections, *In re Van Ettan Lake*, 149 Mich. App. 517, 525–526, 386 N.W.2d 572 (1986), the court did adjudicate the issue of whether plaintiff's property had been damaged and made findings with respect to that issue. *Heeringa v. Petroelje*, 279 Mich.App. 444, 449–450, 760 N.W.2d 538, (2008) (concluding that findings of fact made during adjudicatory proceedings have preclusive effect). As part of the [Inland Lake Level Act] proceedings, this issue of whether plaintiff's property had been damaged was necessarily considered and "litigated" by the parties during a two-day hearing. *See* [Mich. Comp. Laws §] 324.30707(4); *Zerfas*, *supra* at 664, 40 N.W.2d 763. It follows, like in *Zerfas*, that plaintiff is collaterally estopped from relitigating the issue of whether the lake levels caused damage to the home. To conclude, it is clear that all three elements of collateral estoppel are met, such that the issue of damages to the home is barred: A question of fact essential to the judgment was actually litigated and determined by a valid and final judgment during the petition proceedings, the same parties had a full and fair opportunity to litigate the issue during a two day hearing, and there was mutuality of estoppel. *Estes [v. Titus*, 481 Mich. 573,] 585, 751 N.W.2d 493 [(2008)]. . . .

Plaintiff's argument that proceedings under the [Inland Lake Level Act] are administrative, meaning that the doctrines of collateral estoppel and res judicata do not apply, must necessarily fail because the *Zerfas* Court determined that [Inland Lake Level Act] proceedings are adjudicatory in nature. *Zerfas*, *supra* at 664, 40 N.W.2d 763. We are bound to follow the decisions of the Supreme Court until it overrules itself. *O'Dess v. Grand Trunk Western R Co.*, 218 Mich.App. 694, 700, 555 N.W.2d 261 (1996). Thus, we conclude that the circuit court did not abuse its discretion by granting defendants' motion for reconsideration and precluding from consideration the issue of whether lake levels caused damage to plaintiff's home.

*Van Wulfen II*, No. 281930, 2009 WL 723806 at *5–6. Because Judge Kowalski's opinion on causation prevents relitigation of the issue in Michigan state courts, it necessarily prevents relitigation in this Court as well. 28 U.S.C. § 1738.

Plaintiff correctly emphasizes that Judge Lawson reached the opposite conclusion on issue preclusion in *Van Wulfen I*. In Judge Lawson's view, the Inland Lake Level Act hearing before Judge Kowalski was not adjudicatory and therefore not preclusive. *Van Wulfen I*, 345 F. Supp. 2d at 738–40. However, the question of the preclusive effect to be given to the conclusion of a state court conducting an Inland Lake Level Act hearing is governed by state law. 28 U.S.C. § 1738; *see also Stemler v. Florence*, 350 F.3d 578, 586 (6th Cir. 2004) ("When deciding whether to afford preclusive effect to a state court judgment, the Full Faith and Credit Act, 28 U.S.C. § 1738, requires the federal court to give the prior adjudication the same preclusive effect it would have under the law of the state whose court issued the judgment."). In Michigan, the conclusions reached by a circuit court judge in an Inland Lake Level Act hearing are preclusive. *Zerfas*, 326 Mich. 657; *Van Wulfen II*, No. 281930, 2009 WL 723806. Accordingly, Judge Kowalski's conclusion that Plaintiff cannot prove the increased lake level caused the damage to Plaintiff's home cannot be revisited.

Additionally, the Court finds the Plaintiff's reliance on the law-of-the-case doctrine unconvincing because Judge Lawson's discussion of issue preclusion in *Van Wulfen I* was not necessary to the resolution of that case and because intervening decisions from the Supreme Court and the Michigan Court of Appeals make reconsideration necessary. *Arizona v. California*, 460 U.S. 605, 618 (1983) ("As most commonly defined, the doctrine [of law-

of-the-case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."); *see also United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990) (recognizing limited exceptions to the law of the case doctrine). As previously discussed, Judge Lawson's discussion of issue preclusion was unnecessary to his ultimate decision in the case. Moreover, the subsequent decisions by the Supreme Court in *San Remo* and the Michigan Court of Appeals in *Van Wulfen II* make clear that Judge Kowalski's factual finding should be respected.

This Court is similarly bound by the Michigan state court's conclusion in *Van Wulfen II* that Plaintiff cannot prove the increased lake level damaged the seawall or caused the mounding in front of the home. *Van Wulfen II*, No. 281930, 2009 WL 723806 at *7.

The Court is mindful of the fact Plaintiff was required to litigate his inverse condemnation claim in state court before his Fifth Amendment claim would be ripe for review in federal court. But as a result of litigating the claim in state court, the adverse result prevented him from relitigating causation in this Court. *San Remo*, 545 U.S. 323. The combination of *Williamson* and 28 U.S.C. § 1738, coupled with an adverse decision in state court, made it impossible for Plaintiff to litigate his Fifth Amendment claim in federal court. Although the result may be anomalous, as emphasized by Chief Justice Rehnquist in *Williamson County*, 545 U.S. at 351, it is mandated by existing precedent.

Finally, because of the Court's conclusion that Plaintiff is precluded from relitigating causation in this Court, it is unnecessary to consider Defendant's contention that Plaintiff's purported *England* reservation was ineffective. Regardless of whether Plaintiff properly

reserved his Fifth Amendment claims for litigation in this Court, the complaint must be dismissed because he cannot prove causation.

Accordingly, it is **ORDERED** that the Defendant's motion for summary judgment [Dkt. # 15] is **GRANTED**.

It is further **ORDERED** that Plaintiff's complaint is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the hearing set for January 13, 2010 is **CANCELLED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: January 8, 2010

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 8, 2010.

s/Tracy A. Jacobs
TRACY A. JACOBS